# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **GREGORY POWELL,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **CIVIL ACTION NO.** |
| | ] | **2:16-CV-01492-KOB** |
| **NATIONAL LABOR RELATIONS** | ] | |
| **BOARD,** | ] | |
| | ] | |
| **Defendant.** | ] | |

## MEMORANDUM OPINION

This Merit Systems Protection Board administrative record review matter comes before the court on the Defendant National Labor Relations Board's and the Plaintiff Gregory Powell's cross-motions for summary judgment. (Doc. 26 and Doc. 29, respectively).

The NLRB terminated Mr. Powell because he lost confidential witness statements, neglected to inform his supervisor of the loss, failed to follow his supervisor's instructions to document the matter, and attempted to deceive the official who investigated the incident. Mr. Powell appealed his termination to the MSPB, and the MSPB affirmed.

In his amended complaint, Mr. Powell brings discrimination claims against the NLRB and a claim for an MSPB administrative record review. The court ordered briefing only on the administrative record review claim, which is the only

1

claim currently before the court.

In his motion for summary judgment, Mr. Powell urges this court to reverse the MSPB's decision because, according to Mr. Powell, the MSPB reached an arbitrary and capricious decision not supported by substantial evidence because the NLRB had no reason to terminate him.

On the other hand, in its motion for summary judgment, the NLRB asks the court to sustain the MSPB decision because, according to the NLRB, Mr. Powell has not met his burden to show that the MSPB committed any reversible error in finding that the NLRB proved the charges against Mr. Powell by a preponderance of the evidence and assessed a reasonable penalty.

The court will DENY Mr. Powell's motion for summary judgment and GRANT the NLRB's motion for summary judgment. As further explained below, substantial evidence supports the MSPB's conclusion that the NLRB proved the charges against Mr. Powell by a preponderance of the evidence, and the MSPB did not reach an arbitrary and capricious decision because it correctly found that the NLRB reasonably evaluated all relevant factors in deciding to terminate Mr. Powell.

## I.  STANDARD OF REVIEW

Though the parties style their motions as motions for summary judgment, they do not move the court to recognize the absence of any genuine dispute of

material fact under Rule 56(a) of the Federal Rules of Civil Procedure. Instead, they ask the court to review the MSPB decision sustaining the NLRB's termination of Mr. Powell, so the standard for judicial review of an MSPB decision, not the Rule 56(a) standard of review, presently applies.

The MSPB hears appeals from specified adverse employment actions taken by federal agencies. 5 U.S.C. § 7701. The MSPB will sustain the agency's decision if a preponderance of the evidence supports it. 5 U.S.C. § 7701(c)(1)(B). And the MSPB will reverse the agency's decision if it finds "harmful error in the application of the agency's procedures in arriving at such decision"; "that the decision was based on any prohibited personnel practice"; or "that the decision was not in accordance with law." 5 U.S.C. § 7701(c)(2).

An aggrieved plaintiff may obtain judicial review of an MSPB decision. 5 U.S.C. § 7703(a)(1). As Mr. Powell did, if the plaintiff brought discrimination claims and claims not based on discrimination—so-called "mixed" cases—before the MSPB, then the plaintiff may seek review in district court. 5 U.S.C. § 7703(b)(2); *see Kelliher v. Veneman*, 313 F.3d 1270, 1274 (11th Cir. 2002). The district court reviews the discrimination claims *de novo*. 5 U.S.C. § 7703(c). But the court reviews non-discrimination claims "on the record," and will set aside the MSPB decision "only if the 'agency action, finding or conclusion' is found to be[] '(1) arbitrary, capricious, an abuse of discretion or otherwise not in accordance

with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence.'" *Kelliher*, 313 F.3d at 1274 (quoting 5 U.S.C. § 7703(c)). The plaintiff bears the burden of showing that the MSPB committed one of these reversible errors. *Harris v. Dep't of Veterans Affairs*, 142 F.3d 1463, 1467 (Fed. Cir. 1998).

Here, because the parties have not moved for summary judgment on Mr. Powell's discrimination claims, the court will conduct an "on the record" review. The record review standard is deferential. When determining whether the MSPB reached an arbitrary and capricious decision, the court "do[es] not substitute [its own] judgment for that of the agency but rather only seek[s] to ensure that the decision was reasonable and rational." *Kelliher*, 313 F.3d at 1276 (citing *Zukas v. Hinson*, 124 F.3d 1407, 1409 (11th Cir. 1997)).

The Eleventh Circuit has found that "'[a]long the standard of review continuum, the arbitrary and capricious standard gives an appellate court the least latitude in finding grounds for reversal.'" *Id.* (quoting *N. Buckhead Civic Ass'n v. Skinner*, 903 F.2d 1533, 1538 (11th Cir. 1990)). And the court "must only 'consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error in judgment.'" *Id.* (quoting *Skinner*, 903 F.2d at 1538).

## II.     BACKGROUND

To comprehensively review the MSPB decision, the court must track the events of Mr. Powell's alleged misconduct, the NLRB's investigation into that misconduct, the NLRB's proposed removal, the NLRB's decision to remove, and then the MSPB's review of that decision.

### A.     The Hillshire Case Investigation and Affidavits

Mr. Powell worked as a field attorney for the NLRB in the Birmingham, Alabama Resident Office from 1997 until his termination on September 24, 2013. As a field attorney, Mr. Powell investigated charges of unfair labor practices brought against private employers.  (Doc. 25-1 at 2; Doc. 25-24 at 239–40).

On November 7, 2012, Mr. Powell travelled to Florence, Alabama to investigate unfair labor practice charges against Hillshire Brands by taking affidavits from potential witnesses.  He remained in Florence until November 10, 2012.  (Doc. 25-8 at 1, 21–22).

While in Florence, Mr. Powell stayed at a Hampton Inn.  Mr. Powell kept all of his records, research, case law, draft affidavits, and predisposition statements in a large red plastic tub.  He met with witnesses and drafted affidavits in his hotel room on a laptop computer.  He often left documents laid out in his hotel room. After he finished typing an affidavit, he saved the affidavit to a USB drive, took the USB drive down to the Hampton Inn's business center, printed the affidavit

from one of the Hampton Inn's computers, and had the witness sign the affidavit. (Doc. 25-8 at 24–29, 34).

On November 9, 2012, Hillshire's attorney, Sandra Zubick, sent Mr. Powell an email stating that a man who refused to identify himself delivered unsigned affidavits to Hillshire's facility in Florence that appeared to have been taken in connection with Mr. Powell's investigation. Ms. Zubick wrote in the email that the man who delivered the affidavits claimed that he found them at a local hotel. (Doc. 25-8 at 22, 194).

On November 14, 2012, after Mr. Powell returned to the Birmingham office, Mr. Powell sent Ms. Zubick a response email stating, "I find that a bit odd. But, forward them to me. What is the young man's name? Remember, if anyone from [Hillshire] management reads them (or an agent thereof), there may be possible violations of the [National Labor Relations Act]." (Doc. 25-8 at 194).

Ms. Zubick sent the affidavits to Mr. Powell by mail. On November 15, 2012, three unsigned affidavits—one by Randy Hadley dated August 16, 2012, one by Tanya Rowlett dated November 7, 2012, and one by Brandy Page dated November 8, 2012—arrived on Mr. Powell's desk in the Birmingham office. (Doc. 25-8 at 197–208). Mr. Powell had interviewed Tanya Rowlett and Brandy Page in Florence, and he prepared Randy Hadley's affidavit before he traveled to Florence. (Doc. 25-8 at 26, 41). Ms. Zubick informed Mr. Powell that the

affidavits were clearly visible because the man who delivered the affidavits did not deliver them in an envelope. (Doc. 25-8 at 195–96). Mr. Powell did not immediately report the loss of the affidavits to any other members of NLRB. (Doc. 25-8 at 30).

The Resident Officer who supervised all investigations out of the Birmingham office, Belinda Bennett, assigned the Hillshire case to an NLRB attorney in Atlanta, Carla Wiley, to litigate. On February 8, 2013, Ms. Wiley sent an email to her supervisor, Mary Bulls, stating that Hillshire's attorney told her that he saw the affidavits delivered to Hillshire in November 2012, and that based on what Hillshire's attorney saw in the affidavits, Hillshire was not concerned about NLRB's claims. Ms. Bulls then reported the incident to Ms. Bennett and the Regional Director, Claude Harrell. (Doc. 25-8 at 283).

Ms. Bennett called Mr. Powell to inquire about the affidavits. Mr. Powell told Ms. Bennet that Ms. Zubick told him that Hillshire received the affidavits and then mailed the affidavits back to him. (Doc. 25-8 at 30).

On the morning of February 8, 2013, Ms. Bennett emailed Mr. Powell telling him to prepare a memo detailing the circumstances of the affidavits. That afternoon, Ms. Bennet emailed him again instructing him to prepare a memo because she "need[ed] to address these concerns right away." (Doc. 25-8 at 277). Mr. Powell responded, "I have already responded. There will be no additional

written responses.  White employees don't have to write responses so why do African American men have to?"  (Doc. 25-8 at 277).  Ms. Bennett responded, "[w]hat are you talking about?  What has race got to do with this?  Confidential statements were compromised.  We need to know what happened with the return of the affidavits by the company.  This is not about race.  Whether black or white I would be asking the same thing."  (Doc. 25-8 at 277).  Ms. Bennett asked, "[w]hat is the extent of exposure for our witnesses?  Which ones were exposed?"  (Doc. 25-8 at 277).  Mr. Powell responded, "[t]hese statements would have been seen in court anyway."  (Doc. 25-8 at 277).

###   B.    The Inspector General Investigation

The NLRB Inspector General, David Berry, investigated the incident and interviewed Mr. Powell.  During the interview, Mr. Powell told Mr. Berry that a witness arrived to Mr. Powell's hotel in Florence with a folder, was "definitely anti-union," "did not want to be there," and was "[m]ore than hostile."  (Doc. 25-8 at 143).  She arrived to the hotel with a man who was also "really hostile" and "adamant on coming up to [Mr. Powell's] room," but the man did not go into Mr. Powell's room.  (*Id.*).  Mr. Powell interviewed the witness and took her affidavit in his hotel room.  He then briefly left the witness alone in his hotel room while he used the bathroom.  When Mr. Powell left to use the bathroom, the witness was reviewing her affidavit on Mr. Powell's computer.  (*Id.* at 33–35, 143).

Further, during the interview, Mr. Powell asserted that Ms. Bennett must have known about the affidavits on November 15, 2012, the day the Birmingham office received the affidavits by mail, because the affidavits were date-stamped received. According to Mr. Powell, the office mail policy required a clerk to date-stamp all incoming mail and then give the mail to Ms. Bennett before distributing the mail to the addressee. So, according to Mr. Powell, he had no reason to inform Ms. Bennett of the affidavits because she must have already seen them. (Doc. 25-8 at 137–38).

But Mr. Berry then learned from internal emails and interviews with Ms. Bennet and another NLRB attorney that, in November 2012, the mail policy did not require the clerk to provide all incoming mail to Ms. Bennett. At that time, the clerk date-stamped the incoming mail and distributed it directly to the addressee. Because of Mr. Powell's conduct, the mail policy changed in March 2013, and thereafter required the clerk to circulate mail through Ms. Bennett. Another NLRB attorney told Mr. Berry that someone communicated the mail policy change at a staff meeting in March 2013 that Mr. Powell attended. (Doc. 25-8 at 247–52).

Mr. Berry issued his Report of Investigation on May 30, 2013. (Doc. 25-8). In the Report, Mr. Berry concluded that reasonable cause existed to find that Mr. Powell allowed the improper disclosure of confidential information by losing the witness affidavits; failed to properly safeguard the Hillshire case file and report the

loss of the affidavits; acted insubordinately when he refused to provide information about the affidavits when Ms. Bennet asked him to do so; and provided false and misleading information during his interview when he "attempt[ed] to shift the focus of the OIG investigation to [Ms. Bennet]" by alleging that she received the returned affidavits before he did.  (Doc. 25-8 at 8–9).

###  C.    The Proposal to Remove

Relying on Mr. Berry's Report of Investigation, the NLRB Assistant to the General Counsel, Elizabeth Tursell, proposed removing Mr. Powell from his position.  (Doc. 25-6).  Ms. Tursell brought four charges against Mr. Powell in the Proposal to Remove: (1) failure to safeguard agency property; (2) negligent performance of duties; (3) failure to follow supervisory instructions; and (4) lack of candor during the Inspector General investigation.

Ms. Tursell charged Mr. Powell with failure to safeguard agency property because she found that he had no awareness at any given time of how many copies of each affidavit were in the agency file; spread out affidavits throughout his hotel room while working with witnesses; left a hostile witness alone in his hotel room; and used the printer at the hotel's business center instead of his own portable printer.  She concluded that somebody most likely took the affidavits from Mr. Powell's hotel room.  (Doc. 25-6 at 3).

Ms. Tursell charged Mr. Powell with negligent performance of duties

because Mr. Powell was not aware of the missing affidavits until Hillshire's counsel emailed him and he did not inform his supervisor about the incident. (Doc. 25-6 at 4–5).

Ms. Tursell charged Mr. Powell with failure to follow supervisory instructions because he refused to follow Ms. Bennett's instructions to write a memo detailing the circumstances of the lost affidavits and the agency's exposure. (Doc. 25-6 at 6).

And Ms. Tursell charged Mr. Powell with lack of candor during the investigation because he "deliberately distorted essential facts and circumstances critical to the investigation" when he testified that Ms. Bennett must have seen the affidavits in November 2012 under a mail policy that was not in effect until March 2013. (Doc. 25-6 at 8).

### D.     <u>Mr. Powell's Response to the Proposal to Remove</u>

Mr. Powell responded to the proposal to remove by written response on August 23, 2013, and by oral reply on August 26, 2013. (Doc. 25-11).

In his written response, Mr. Powell asserted that the Inspector General's Report of Investigation completely failed to establish any evidence of wrongdoing because no one proved the actual origin of the affidavits. He asserted that "[s]everal lawyers and a field examiner were reassigned the same case and the incomplete affidavits in question could have been in any number of peoples [sic]

possession, as well as having been taken from the unlocked office of Mr. Powell while he was not there." (Doc. 25-11 at 30–31). He contended also that the affidavits could not have come from his hotel room because, as he told Mr. Berry during his interview, Mr. Powell completed one of the affidavits, Randy Hadley's affidavit, before his trip to Florence and did not take the affidavit to Florence. (Doc. 25-11 at 31).

Mr. Powell also accused Mr. Berry of misrepresenting the record in his Report of Investigation. According to Mr. Powell, he never "agreed" with Mr. Berry's statement that the affidavits had to be taken from Mr. Powell's hotel room—though Mr. Powell did respond "uh-huh" when Mr. Berry asked him, "the most likely explanation is that it actually was someone in your room who secreted away these documents from the material that was available in your room." (Doc. 25-8 at 154; Doc. 25-11 at 41).

Mr. Powell also disputed Mr. Berry's finding that he did not timely inform Ms. Bennett about the lost affidavits because he thought management must have known about the affidavits because the envelope with the returned affidavits was date-stamped. He denied that he attempted to hide the affidavits or deflect attention to Ms. Bennett by telling Mr. Berry that Ms. Bennet must have seen the affidavits, though Mr. Powell did not address Mr. Berry's contention that Mr. Powell's version of the mail policy was not in effect until months after he received

the affidavits.  (Doc. 25-11 at 42).

Mr. Powell also denied that he failed to follow Ms. Bennett's instructions because he explained to Ms. Bennet over the phone what happened with the affidavits and informed Ms. Bennett that he would not prepare a written memo because he was already preparing a "telephone affidavit" regarding the incident. (Doc. 25-11 at 48).

Also, in his written response, he made several allegations of retaliation and discrimination based on disability, race, and sex.  He alleged that Mr. Berry's Report of Investigation discriminated against Mr. Powell for having diabetes because Mr. Powell did not bring the appropriate amount of medicine for his diabetes to Florence, so Mr. Powell struggled with the demands of the investigation.  (Doc. 25-11 at 43–44).

He alleged that Mr. Berry's Report discriminated against him because he is African-American and male because, according to Mr. Powell, the NLRB only disciplined African-African men in Region 10 during his 16-year tenure with the NLRB.  (Doc. 25-11 at 36).  He alleged that the NLRB did not discipline a white female attorney in Region 10 who refused to forward a weekly case report to her supervisor.  He also alleged that the regional director had once instructed Mr. Powell to write a report about why he could not finish a case sooner, but the regional director did not give the same instructions to a white female attorney who

took much longer to finish a case.  And he alleged that two white attorneys lost their building access cards, which supposedly led to a burglary of personal property from Mr. Powell's office, but the NLRB refused to investigate the incident because of Mr. Powell's race.  (Doc. 25-11 at 50–51).

And he alleged that Mr. Berry investigated him in retaliation for Mr. Powell previously filing EEOC charges of discrimination against the NLRB.  According to Mr. Powell, Mr. Berry retaliated against him because the investigation took place before the EEOC took any action on his charge of discrimination.  (Doc. 25-11 at 42–43).

In his oral reply, Mr. Powell reiterated his arguments that no credible evidence supported Mr. Berry's findings that he mishandled the affidavits, refused his supervisor's instructions, or lacked candor in the investigation, and he again alleged that the NLRB discriminated against him on the basis of disability, race, sex, and retaliation.  (*See* Doc. 25-11 at 3–27).

### E.      The Agency Decision on the Proposal to Remove

On September 24, 2012, the NLRB Associate General Counsel, Anne Purcell, issued the agency's decision on the proposal to remove Mr. Powell.  (Doc. 25-10).  Ms. Purcell determined that sufficient facts supported each of the four charges against Mr. Powell and decided to remove him from the NLRB.

In reaching her decision, and as further explained below, Ms. Purcell

evaluated the factors established in *Douglas v. Veterans Administration*, 5
M.S.P.R. 280 (1981), that the MSPB required her to consider in determining an
appropriate penalty for an employee's misconduct.  She determined that Mr.
Powell committed serious offenses directly related to his duties as a field attorney
by losing the affidavits and not reporting the incident to a supervisor.  She
considered how failing to keep witness statements confidential damaged the public
trust in the NLRB.  She also found that Mr. Powell lacked any rehabilitative
potential because of his lack of remorse and candor.  Though Ms. Purcell had
never evaluated offenses like Mr. Powell's specific offenses, she determined that
the NLRB had previously terminated employees for similar offenses.  And though
she considered that the NLRB had never disciplined Mr. Powell in 16 years, she
ultimately concluded that Mr. Powell created insurmountable trust issues regarding
his ability to perform his work duties.

The NLRB terminated Mr. Powell on September 24, 2013.  (Doc. 25-10 at
12).

F.    **The MSPB Appeal**

Mr. Powell timely appealed the NLRB's decision to terminate him to the
MSPB.  The MSPB heard testimony from Ms. Purcell, Ms. Bennett, Mr. Berry,
and Mr. Powell over the course of three days.  (Docs. 25-22, 25-24, 25-25).

Administrative Law Judge Sharon Pomerance issued the MSPB's decision

affirming the NLRB's decision on August 19, 2015.  In her decision, the ALJ restated the undisputed facts regarding Mr. Powell's activities in Florence, the return of the affidavits to the NLRB office, Mr. Powell's refusal to prepare a written memo for Ms. Bennett, and the Inspector General investigation.

The ALJ found that the NLRB proved all four charges against Mr. Powell by a preponderance of the evidence.  First, she found that the NLRB proved by a preponderance of the evidence that Mr. Powell failed to safeguard agency property because he left an anti-union witness alone in his hotel room while she reviewed her affidavit; he laid out documents around his hotel room; he was not aware that any affidavits were missing until he returned to the Birmingham office; Hillshire received the affidavits; and, of the three lost affidavits, Mr. Powell interviewed two of the witnesses in Florence and had previously wrote the third affidavit.  From this evidence, the ALJ concluded that, more likely than not, Mr. Powell's failure to safeguard the affidavits caused the disclosure of the affidavits to Hillshire.  (Doc. 25-1 at 7–8).

The ALJ then found that the NLRB proved by a preponderance of the evidence that Mr. Powell negligently performed his duties by not notifying Ms. Bennett that the affidavits had been compromised.  The ALJ agreed that Mr. Powell did not support his claim that Ms. Bennett saw the affidavits first because the mail policy in November 2012 required mail to be opened, date-stamped, and

delivered directly to the addressee.  (Doc. 25-1 at 9–13).

The ALJ then found that the NLRB proved by a preponderance of the evidence that Mr. Powell failed to follow supervisory instructions because no dispute existed that Mr. Powell refused to follow Ms. Bennett's instruction to prepare a written memo detailing the loss of the affidavits.  The ALJ did not credit any of Mr. Powell's excuses for refusing direct reasonable instructions.

The ALJ then found that the NLRB proved by a preponderance of the evidence that Mr. Powell lacked candor during the Inspector General investigation because he intentionally and falsely claimed that Ms. Bennett saw the affidavits via the mail policy.  The ALJ discredited Mr. Powell's argument that the mail policy in November 2012 required Ms. Bennett to review all incoming mail because Mr. Harrell's and Ms. Bennett's MSPB hearing testimony, and the record evidence for the NLRB Report of Investigation, established that the mail policy did not require Ms. Bennett to review incoming mail until March 2013 because of Mr. Powell's failure to report the missing affidavits.  (Doc. 25-1 at 14–16).

The ALJ then found that Mr. Powell did not prove his affirmative defenses of discrimination and retaliation by a preponderance of the evidence.  The ALJ found that Mr. Powell did not show discrimination because he did not identify any similarly situated employees outside of his protected class that the NLRB treated more favorably.  And the ALJ found that Mr. Powell did not show retaliation

because he failed to show a causal connection between his EEO complaint and his termination.  (Doc. 25-1 at 16–19).

The ALJ also found that a nexus existed between the sustained charges against Mr. Powell and the efficiency of the Federal service because Mr. Powell's failure to safeguard confidential witness affidavits, failure to report the incident to his supervisor, failure to follow his supervisor's instructions, and lack of candor affected his job performance and his managers' trust in his performance.  (Doc. 25-1 at 19–20).

The ALJ then determined that the NLRB's decision fell within the bounds of reasonableness.  The ALJ found that Ms. Purcell considered the relevant *Douglas* factors and reasonably determined that, given the seriousness of Mr. Powell's offense, the breach of trust, the lack of rehabilitative potential, and inadequacy of a lesser penalty, removal did not exceed the tolerable bounds of reasonableness.  (Doc. 25-1 at 20–21).

The ALJ finally affirmed the NLRB's decision because the agency proved its charges, established a nexus between Mr. Powell's removal and the efficiency of the service, and established that removal did not exceed the tolerable bounds of reasonableness.  (Doc. 25-1 at 22).

G.    <u>**The Present Action**</u>

Mr. Powell filed a petition for review of the MSPB decision in the United

States Court of Appeals for the Federal Circuit, and the Federal Circuit transferred his case to this court. (Doc. 1). Mr. Powell then filed an amended complaint in which he seeks review of the MSPB decision under 5 U.S.C. § 7703 and brings discrimination claims under Title VII of the Civil Rights Act. (Doc. 8). Only the administrative record review currently comes before the court.

In his amended complaint, Mr. Powell asks the court to set aside the MSPB decision affirming the NLRB decision to remove him because, according to Mr. Powell, the NLRB failed to properly consider the *Douglas* factors when determining an appropriate penalty for his alleged misconduct. (Doc. 8 at ¶ 42).

The NLRB moved for summary judgment on Mr. Powell's record review claim. (Doc. 26). The NLRB contends that the MSPB decision withstands deferential judicial review because, according to the NLRB, the MSPB considered all relevant factors and reached a reasonable conclusion.

Mr. Powell also moved for summary judgment on his record review claim. (Doc. 29). In his motion for summary judgment, Mr. Powell contends that the MSPB decision is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule, or regulation having been followed; or unsupported by substantial evidence. He also contends that the MSPB erroneously affirmed the NLRB decision because the agency did not properly consider the *Douglas* factors in deciding to terminate him.

## III.   ANALYSIS

Mr. Powell's motion for summary judgment constructs a maze of convoluted allegations that requires the court to perform Mr. Powell's crucial task—argue why the MSPB decision fails 5 U.S.C. § 7703 judicial review—for him.  His motion, in many instances, fails to support his allegations with record citations, inaccurately or falsely characterizes evidence, fails to acknowledge his burden of proof or relate his arguments to any standard of review, makes an abundance of irrelevant assertions, lacks logical organization or formatting, and seems to bring claims never raised in his amended complaint or anywhere else in this case.  Despite these flaws, the court will, to the best of its ability, parse Mr. Powell's motion to determine why he believes he has met his burden to show that the MSPB committed reversible error.

### A.      <u>Substantial Evidence Supports the MSPB Decision</u>

The court begins with what it construes as Mr. Powell's argument that substantial evidence does not support the MSPB decision.  Mr. Powell's argument fails because, at best, he only disagrees with the MSPB decision.  He does not, as his burden on judicial review of an administrative record requires him to do, show that substantial evidence does not support the MSPB decision.

### 1.      *Charge one: failure to safeguard agency property*

Mr. Powell argues that no evidence supports the MSPB's decision that the

NLRB proved the failure to safeguard agency property charge by a preponderance of the evidence because another field attorney, Shelly Skinner, worked in Florence at the same time that Mr. Powell worked in Florence. So, according to Mr. Powell, Ms. Skinner could have lost the affidavits. Further, he argues that the NLRB did not definitively prove that the affidavits came from Mr. Powell's hotel room. (*See* Doc. 30 at 5, 7, 11–13, 21, 24–26).

Though Ms. Skinner worked in Florence for a portion of the time that Mr. Powell worked in Florence, no evidence connects Ms. Skinner to the lost affidavits. According to Ms. Bennett's MSPB hearing testimony, Ms. Skinner traveled to Florence to take the affidavit of one witness who was *not* one of the three witnesses whose affidavits were lost. Ms. Skinner could not reach that witness in Florence and then returned to Birmingham before November 9, 2012. (Doc. 25-24 at 13–15). These facts do not implicate Ms. Skinner or diminish the evidence against Mr. Powell.

And though the NLRB did not *definitively* prove that the lost affidavits came from Mr. Powell's hotel—the investigation found no eyewitness or the unknown individual who delivered the affidavits to Hillshire—more than enough evidence supports that the affidavits most likely came from Mr. Powell's hotel room. Mr. Powell interviewed two of the witnesses in Florence whose affidavits ended up at Hillshire and he drafted the third affidavit; he laid out documents around his hotel

room; and he left alone in his hotel room a hostile anti-union witness, who arrived with a folder and a hostile man who wanted to come up to Mr. Powell's room, while she reviewed her affidavit. Based on this evidence, the MSPB appropriately concluded that a preponderance of the evidence supported the NLRB's conclusion that Mr. Powell failed to safeguard agency property.

2. *Charge two: negligent performance of duties*

Next, Mr. Powell argues that no evidence supports the MSPB's decision that the NLRB proved the negligent performance of duties charge by a preponderance of the evidence. According to Mr. Powell, he did not have to inform Ms. Bennett about the lost affidavits because (1) field attorneys had discretion when to consult with their supervisors on cases; (2) Hillshire's counsel informed Mr. Powell via email that she did not review the affidavits; (3) Mr. Powell advised Hillshire's counsel of the consequences of reviewing the affidavits; and (4) Ms. Bennett must have received the affidavits before he did because the mail had a date stamp. (*See* Doc. 30 at 26).

Despite Mr. Powell's contentions, the MSPB reasonably concluded that "given the seriousness of the incident, [Mr. Powell] had a duty to notify Ms. Bennett that the affidavits had been compromised." (Doc. 25-1 at 11). The MSPB noted how Mr. Powell, as a seasoned attorney, should have known that losing the confidential affidavits could compromise the NLRB's position and put the affiants

at risk for retaliation.  And the MSPB considered it incredulous that Mr. Powell did not think that losing the affidavits would impact the Hillshire case just because Hillshire's counsel assured him that she did not read the affidavits.

Further, the MSPB reasonably concluded that the NLRB rightfully discredited Mr. Powell's version of the mail policy in effect in November 2012. Ms. Bennett and Mr. Harrell both testified at the MSPB hearing that, in November 2012, the clerk stamped incoming mail and delivered it directly to the addressee. This testimony comports with Ms. Bennett's and another NLRB attorney's interviews with Mr. Berry, as well as internal emails discussing the change in the mail policy.  So, substantial evidence supports the MSPB's determination that Mr. Powell had no reason to believe that Ms. Bennett received the affidavits.

### 3.    *Charge three: failure to follow supervisory instructions*

Mr. Powell also argues that no evidence supports the MSPB's decision that the NLRB proved the failure to follow supervisory instructions charge by a preponderance of the evidence.  According to Mr. Powell, he did not refuse any instructions because he answered all of Ms. Bennett's questions about the affidavits over the phone and by email.  (Doc. 30 at 6, 10, 27).

But Mr. Powell's argument fails because no dispute exists that Mr. Powell did *not* prepare a written memo as Ms. Bennet instructed, and no evidence questions the reasonableness of Ms. Bennett's instructions.  So, substantial

evidence supports the MSPB decision that the NLRB proved the failure to follow supervisory instructions charge by a preponderance of the evidence.

### 4.  *Charge four: Lack of candor during the investigation*

Further, Mr. Powell argues that no evidence supports the MSPB's decision that the NLRB proved the lack of candor charge by a preponderance of the evidence.  According to Mr. Powell, he truthfully reported the mail policy to Mr. Berry and thus did not lack candor during the investigation.  (Doc. 30 at 6–7, 9, 27–28).  But, as the court discussed above, the MSPB reasonably discredited Mr. Powell's version of the mail policy because the record contradicted it.  So, substantial evidence supports the MSPB's conclusion that Mr. Powell displayed a lack of candor by misleading Mr. Berry about the mail policy.

Thus, Mr. Powell has failed to establish that substantial evidence does not support the MSPB decision, so the court will not set aside the MSPB decision on evidentiary grounds.

### B.  __The MSPB Did Not Reach an Arbitrary and Capricious Decision__

Mr. Powell next contends that the MSPB reached an arbitrary and capricious decision because, according to Mr. Powell, the MSPB could not reasonably conclude that the NLRB considered all of the relevant *Douglas* factors.  But the NLRB did meaningfully evaluate all of the relevant *Douglas* factors; Mr. Powell simply disagrees with the outcome.

An agency must consider all relevant mitigating and aggravating factors when determining an appropriate penalty to discipline an employee. *Douglas*, 5 M.S.P.R. at 303. Considering these *Douglas* factors ensures that agencies "exercise responsible judgment in each case, based on rather specific, individual considerations, rather than acting automatically on the basis of generalizations unrelated to the individual situation." *Id.*

These factors include, but are not limited to, the following:

(1) The nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated;

(2) the employee's job level and type of employment, including supervisory or fiduciary role, contacts with the public, and prominence of the position;

(3) the employee's past disciplinary record;

(4) the employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability;

(5) the effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to perform assigned duties;

(6) consistency of the penalty with those imposed upon other employees for the same or similar offenses;

(7) consistency of the penalty with any applicable agency table of penalties;

(8) the notoriety of the offense or its impact upon the reputation of the

agency;

(9) the clarity with which the employee was on notice of any rules that where violated in committing the offense, or had been warned about the conduct in question;

(10) potential for the employee's rehabilitation;

(11) mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment, harassment, or bad faith, malice or provocation on the part of others involved in the matter; and

(12) the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others.

*Douglas*, 5 M.S.P.R. at 305–06. Because "[n]ot all of these factors will be pertinent in every case, . . . [s]election of an appropriate penalty must [] involve a responsible balancing of the relevant factors in the individual case." *Id.* at 306.

When reviewing an agency's weighing of the *Douglas* factors, the MSPB does not "insist that the balance be struck precisely where the Board would choose to strike it if the Board were in the agency's shoes" because "such an approach would fail to accord proper deference to the agency's primary discretion in managing its workforce." *Douglas*, 5 M.S.P.R. at 306. Rather, the MSPB ensures that "the agency did conscientiously consider the relevant factors and did strike a responsible balance within tolerable limits of reasonableness." *Id.* The MSPB will correct the agency's decision "[o]nly if the Board finds that the agency failed to weigh the relevant factors, or that the agency's judgment clearly exceeded the

limits of reasonableness." *Id.*

Here, as further explained below, the MSPB correctly found that the NLRB deciding official, Ms. Purcell, meaningfully evaluated and balanced all of the relevant *Douglas* factors.

### 1. The nature and seriousness of the offense

Ms. Purcell found that Mr. Powell committed extremely serious offenses directly related to his duties as a field attorney because they involved the loss of confidential witness statements for a potential case against Hillshire and risked compromising the case. She also considered how an Inspector General investigation had to uncover the truth because Mr. Powell refused to report the missing affidavits and provide Ms. Bennett with a written report of the circumstances surrounding the lost affidavits.

### 2. Mr. Powell's job level and type of employment

Ms. Purcell considered that Mr. Powell worked for the NLRB as an attorney for 16 years. She considered his work experience as a mitigating factor.

But Ms. Purcell also considered the fact that Mr. Powell's position works directly with the public, and the public relies on him to take confidential statements and keep them confidential. Ms. Purcell found that he violated that trust.

### 3. Mr. Powell's past disciplinary record

Ms. Purcell considered the fact that Mr. Powell had no prior record of any

discipline to be a mitigating factor.

4.  *Mr. Powell's past work record*

Ms. Purcell considered that Mr. Powell received a "Fully Successful" on his last job evaluation, but she did not consider his work performance to be a mitigating factor.

5.  *The effect of Mr. Powell's offense on his ability to perform at a satisfactory level and its effect upon his supervisors' confidence in him*

Ms. Purcell found that Mr. Powell's offenses demonstrated that he could not perform his position at a satisfactory level because he failed to safeguard confidential affidavits as part of his duties as a field attorney. She also found that his offenses diminished his supervisors' confidence in his ability to work independently and with little supervision.

6.  *Consistency of the penalty with those imposed upon other employees for similar offenses; and*

7.  *Consistency of the penalty with any applicable agency table of penalties*

Ms. Purcell found that the agency had no table of penalties and found it difficult to compare Mr. Powell's penalty with any other penalties because she was "unaware of any other situation where we have had a professional attorney fail to safeguard affidavits, neglect to inform his supervisors/client of essential facts about the loss of the affidavits, fail to follow supervisor instruction in this manner, and

lack candor in an IG interview about the events." (Doc. 25-10 at 10). But she found that in other general cases of failure to safeguard agency property, neglect of professional duties, failure to follow supervisory instructions, and lack of candor, the NLRB had applied the penalty of removal from federal service.

8. *The notoriety of Mr. Powell's offense or its impact on the NLRB's reputation*

Ms. Purcell found that Mr. Powell committed a notorious offense that affected the NLRB's reputation; he violated the public's trust in the NLRB to keep witness statements confidential, an outside charged employer learned of Mr. Powell's breach of confidentiality because it received and presumably viewed the affidavits, and others in the regional office became aware of Mr. Powell's offense.

9. *Mr. Powell's notice of the rules he violated*

Ms. Purcell found that Mr. Powell, a 16-year veteran attorney, "had notice that this type of conduct was unacceptable . . . via several mechanisms." Specifically, she referred to his position description, the rules of professional conduct for attorneys, the NLRB Case Handling Manual that discusses the importance of keeping witness affidavits confidential, and the promise he makes to every witness to keep his or her statements confidential.

10. *The potential for Mr. Powell's rehabilitation*

Ms. Purcell considered Mr. Powell's potential for rehabilitation to be "one of the most important *Douglas* factors." (Doc. 25-10 at 12). She concluded that Mr.

Powell lacked potential for rehabilitation for several reasons.

First, Ms. Purcell found it troubling that Mr. Powell refused to acknowledge that he should have reported the incident to his supervisor and that it was important for him to do so. She found that because he stated several times that the affidavits would have come out at trial anyway, he did not understand *why* the situation greatly concerned the NLRB.

Second, Ms. Purcell found that Mr. Powell's written and oral response to the proposal to remove him from federal service indicated that he did not want to address his conduct, accept responsibility, or change the way he approaches his supervisors' instructions.

Third, Ms. Purcell found that Mr. Powell expressed no remorse for any event. Ms. Purcell stated, "the fact remains that you take no responsibility for these circumstances and are not sorry for anything you have done. You believe you are a victim of others (your colleagues, your supervisors, the IG) and at no time do you take responsibility for any event." (Doc. 25-10 at 12).

### 11. *Mitigating circumstances surrounding the offense*

Ms. Purcell acknowledged Mr. Powell's explanation that he failed to bring the appropriate medication for his diabetes to Florence and expressed sympathy and concern for that stressful situation. But she found that Mr. Powell did not explain how that played a role in the negligent handling of agency property or his

lack of remorse. And she found that Mr. Powell admitted to mishandling documents and leaving witnesses unattended as part of his "long-term process" *before* he was diagnosed with diabetes in May 2012. (Doc. 25-10 at 11). So she did not consider his insufficient diabetes medication to be a mitigating factor.

Ms. Purcell also addressed Mr. Powell's allegations of discrimination in his response to the proposal to remove. Ms. Purcell found that he did not support his allegation that the NLRB disciplines only African-American males in Region 10 because the NLRB never disciplined him in 16 years. And she found that he did not support his claim of retaliation because Mr. Berry and Ms. Tursell had no role in his EEO claims. So Ms. Purcell did not consider alleged discrimination to be a mitigating factor.

### 12. *Adequacy of lesser penalties*

Finally, Ms. Purcell found that demotion would not be an adequate penalty because every attorney position required him to work with the public, work independently, and report back to a supervisory chain. She found that suspension would be inadequate because of Mr. Powell's lack of remorse and belief that he did nothing wrong. She found that any other penalty would be inadequate because "the Region is left with insurmountable issues of trust with regard to your carrying out of your duties and your judgment and concern for the public interest, and has lost confidence in your ability to accurately report on case handling activities."

(Doc. 25-10 at 12).

Given Ms. Purcell's exceedingly thorough analysis of all of the relevant mitigating and aggravating *Douglas* factors applied to the charges brought against Mr. Powell, the court agrees with the MSPB that "the agency established that the penalty of removal did not exceed the tolerable bounds of reasonableness." (Doc. 25-1 at 21). The MSPB thus made an entirely reasonable decision in affirming the NLRB's removal of Mr. Powell. So Mr. Powell has failed to meet his burden to show that the MSPB reached an arbitrary and capricious decision.

## IV. CONCLUSION

Mr. Powell does not meaningfully challenge the evidence supporting his removal or the reasonableness of the MSPB decision affirming his removal, so he has failed to establish any grounds to set aside the MSPB decision.

By separate order, the court will **DENY** Mr. Powell's motion for summary judgment and will **GRANT** the NLRB's motion for summary judgment. The order will dispose of Mr. Powell's administrative record review claim, after which only his discrimination claims will remain.

**DONE** and **ORDERED** this 10th day of January, 2019.

_Karon O. Bowdre_

**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE