UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| GREGORY POWELL, ] | |
| ] | |
| Plaintiff, ] | |
| ] | |
| v. ] | CIVIL ACTION NO. |
| ] | 2:16-CV-01492-KOB |
| NATIONAL LABOR RELATIONS ] | |
| BOARD, ] | |
| ] | |
| Defendant. ] | |

## MEMORANDUM OPINION

This employment discrimination case comes before the court on the Defendant National Labor Relations Board's second motion for summary judgment. (Doc. 53). The court granted the NLRB's first motion for summary judgment on Plaintiff Gregory Powell's claim for judicial review of the Merit Systems Protection Board's decision affirming his termination. Now, the NLRB moves for summary judgment on Mr. Powell's remaining Title VII, ADA, ADEA, and § 1981 discrimination and retaliation claims against it.

The material undisputed facts of this case have not changed since the NLRB's first motion for summary judgment. Mr. Powell, an attorney for the NLRB, learned and failed to report that a company against which the agency was preparing an unfair labor practices case received some of the agency's confidential witness affidavits. The NLRB eventually discovered substantial evidence that Mr.

1

Powell lost those affidavits. When confronted with this evidence and an investigation into the incident, Mr. Powell acted insubordinately and attempted to shift blame to others. So, after an Inspector General investigation, a proposal from the NLRB Assistant to the General Counsel, and an Associate General Counsel review, the NLRB terminated Mr. Powell.

Mr. Powell tells a different story. He contends that the NLRB investigated and terminated him because he is African-American, male, over the age of 40, and diabetic, and in retaliation for him bringing EEO complaints against the agency. He also alleges that the NLRB discriminated against him when the agency counseled him on unprofessional conduct, gave him a middling performance appraisal, reassigned a case that he had been investigating, and failed to promote him to a supervisory position.

But no evidence supports that Mr. Powell's protected characteristics or activities motivated the NLRB's decisions. And several of the NLRB's allegedly discriminatory actions are not serious enough to support an employment discrimination claim. So, as further explained below, the court will grant the NLRB's motion for summary judgment.

I.  **STANDARD OF REVIEW**

A trial court can resolve a case on summary judgment only when the moving party establishes two essential elements: (1) no genuine disputes of material fact

exist; *and* (2) the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

As to the first element of the moving party's summary judgment burden, "[g]enuine disputes [of material fact] are those in which the evidence is such that a reasonable jury *could* return a verdict for the non-movant." *Evans v. Books-A-Million*, 762 F.3d 1288, 1294 (11th Cir. 2014) (emphasis added) (quotation omitted). Only *factual* evidence, as opposed to conclusory statements, with "a real basis in the record" can create genuine factual disputes. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993). And when considering whether any genuine disputes of material fact exist, the court must view the evidence in the record in the light most favorable to the non-moving party and draw reasonable inferences in favor of the non-moving party. *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015).

## II. BACKGROUND

### A. The Hillshire Case Affidavits

Mr. Powell is African-American, male, over the age of 40, and has diabetes. He worked as a field attorney for the NLRB in the Birmingham, Alabama Resident Office from 1997 until his termination on September 24, 2013. As a field attorney, Mr. Powell investigated charges of unfair labor practices brought against private employers.

3

On November 7, 2012, Mr. Powell travelled to Florence, Alabama to investigate an unfair labor practices complaint against Hillshire Brands. In Florence, Mr. Powell gathered evidence for a potential case against Hillshire by interviewing witnesses in his hotel room and having those witnesses sign affidavits that he drafted.

On November 9, 2012, Hillshire's counsel sent Mr. Powell an email stating that a man who refused to identify himself delivered unsigned affidavits to Hillshire's facility in Florence that appeared to have been taken in connection with Mr. Powell's investigation. Hillshire's attorney wrote in the email that the man who delivered the affidavits claimed that he found them at a local hotel. (Doc. 25-8 at 22, 194).

On November 14, 2012, after he returned to the Birmingham office, Mr. Powell responded to the email from Hillshire's counsel and told her to return the affidavits to him. The affidavits arrived by mail to Mr. Powell's office on November 19, 2012. Mr. Powell did not immediately report the loss of the affidavits to any other members of NLRB. (Doc. 25-8 at 30).

Then, before learning of the lost affidavits, the Resident Officer who supervised all investigations out of the NLRB Birmingham Resident Office, Belinda Bennett, assigned the Hillshire case to an NLRB attorney in Atlanta, Carla Wiley, to litigate. Ms. Bennett testified that she reassigned the Hillshire case

because Mr. Powell was not efficiently investigating the case—eight months had passed since the NLRB received the complaint against Hillshire and Mr. Powell still had not collected sufficient evidence for the agency to decide the merits of the complaint. (Doc. 53-1 at 11).

### B. Verbal Counseling for Mr. Powell's Unprofessional Email

After reassigning the Hillshire case to Ms. Wiley, Ms. Bennett asked Mr. Powell to provide the Hillshire case files to Ms. Wiley. In an email, Mr. Powell "responded inappropriately to her requests," though the court cannot discern which of the several emails on the record contains the specific language that he used. (*See* Doc. 53-2 at 15).

On April 26, 2013, the Regional Director for Region 10, Claude Harrell, and Ms. Bennet met with Mr. Powell and the union president to advise Mr. Powell on being professional and collegial with supervisors. A "Memorialization of Verbal Counseling of April 26, 2013" stated that the counseling "was not a disciplinary action and this memorandum does not memorialize or constitute discipline." (Doc. 53-2 at 25).

### C. The NLRB Learns of the Lost Affidavits

On February 8, 2013—approximately three months after Mr. Powell learned of the lost affidavits—Ms. Wiley told her supervisor that Hillshire's attorney had recently informed her that he saw the affidavits in November 2012, and that based

on what he saw in the affidavits, Hillshire was not concerned about NLRB's claims. Ms. Wiley's supervisor reported this information to Ms. Bennett and Mr. Harrell. (Doc. 25-8 at 283).

Ms. Bennett called Mr. Powell to inquire about the affidavits. For the first time, Mr. Powell told Ms. Bennet that Hillshire's counsel informed him back in November 2012 that the company received the affidavits. (Doc. 25-8 at 30).

On the morning of February 8, 2013, Ms. Bennett emailed Mr. Powell and instructed him to prepare a memo detailing the circumstances of the affidavits. That afternoon, Ms. Bennet emailed him again and instructed him to prepare a memo because she "need[ed] to address these concerns right away." (Doc. 25-8 at 277). Mr. Powell responded, "I have already responded. There will be no additional written responses. White employees don't have to write responses so why do African American men have to?" (*Id.*).

Ms. Bennett responded, "[w]hat are you talking about? What has race got to do with this? Confidential statements were compromised. We need to know what happened with the return of the affidavits by the company. This is not about race. Whether black or white I would be asking the same thing." (*Id.*). Ms. Bennett asked, "[w]hat is the extent of exposure for our witnesses? Which ones were exposed?" (*Id.*). Mr. Powell responded, "[t]hese statements would have been seen in court anyway." (*Id.*).

6

## D. The Inspector General Investigation, Mr. Powell's Termination, and Appeals

The NLRB Inspector General investigated the lost affidavits incident. The court presented the facts of this investigation and its consequences in detail in the court's January 10, 2019 Memorandum Opinion on the NLRB's first motion for summary judgment. (*See* Doc. 39 at 8–18). Even so, the court will summarize the relevant facts of the investigation, the agency's resulting actions, and Mr. Powell's appeals.

Following his investigation, the IG determined that Mr. Powell lost the affidavits, failed to properly safeguard the Hillshire case file, failed to report the loss of the affidavits, acted insubordinately by refusing to provide information after the NLRB learned of the lost affidavits, and provided false and misleading information during the investigation by attempting to shift blame to Ms. Bennett. (Doc. 25-8 at 8–9).

Relying on the IG's report, the NLRB Assistant to the General Counsel proposed removing Mr. Powell for his failure to safeguard agency property, negligent performance of duties, failure to follow supervisory instructions, and lack of candor during the IG investigation. (*See* Doc. 25-6).

On September 24, 2013, the NLRB Associate General Counsel accepted the proposal to remove and terminated Mr. Powell. (*See* Doc. 25-10). In doing so, the Associate General Counsel evaluated all of the relevant factors established in

*Douglas v. Veterans Administration*, 5 M.S.P.R. 280 (1981), that the MSPB required her to consider in determining an appropriate penalty.

Mr. Powell appealed the NLRB's decision to terminate him to the MSPB. After a three-day hearing, the MSPB ALJ determined that the NLRB proved its charges against Mr. Powell—failure to safeguard agency property, negligent performance of duties, failure to follow supervisory instructions, and lack of candor—by a preponderance of the evidence. So the ALJ affirmed the NLRB's decision to terminate Mr. Powell.

Mr. Powell then appealed the ALJ's decision to this court. The court found that substantial evidence supported the ALJ's decision and that the ALJ did not reach an arbitrary and capricious decision. So, on the NLRB's motion for summary judgment, the court denied Mr. Powell's appeal.

### E. Mr. Powell's Performance Appraisal and Supervisory Applications

Other events relevant to Mr. Powell's discrimination claims occurred behind the scenes of the NLRB's investigation and decision-making process.

Shortly after the IG issued his investigation report, the NLRB conducted Mr. Powell's 2012–2013 performance appraisal. The agency rated him "Fully Successful," which was a lesser rating than the possible "Outstanding" and "Commendable" ratings, but better than the possible "Minimally Successful" and "Unacceptable" ratings. (Doc. 53-4 at 1). The agency rated him as such in part

because of the way he handled the Hillshire case and the lost affidavits. (*See id.* at 4–5).

Mr. Powell also applied for supervisory positions at NLRB Regional Offices in Kansas City, Winston-Salem, Cincinnati, and Baltimore. Different review panels consisting of three or four individuals reviewed applications for each location. The review panels scored each applicant on criteria like the applicant's knowledge of NLRB procedures, trial experience, managerial abilities, and writing skills. Mr. Powell's scores for the Kansas City, Cincinnati, and Baltimore positions were not high enough to receive an interview for those locations. He received a score of 81 out of 100 for the Winston-Salem position, which was high enough to receive an interview for that location. (Doc. 53-8 at 10–11). Following Mr. Powell's interview, Mr. Harrell recommended another applicant for the position who scored a 92.3 and, according to Mr. Harrell, had excellent leadership, writing, and trial skills. (*Id.* at 4–5).

### F. Mr. Powell's Claims

From the facts discussed above, in his amended complaint, Mr. Powell brings an employment discrimination claim and a retaliation claim under several statutes against the NLRB. The court will analyze each of Mr. Powell's claims in turn.

## III. ANALYSIS

### A. Discrimination

Mr. Powell contends that the NLRB terminated him, failed to promote him to a supervisory position, gave him a middling performance appraisal, verbally counseled him, and took him off the Hillshire case investigation because he is African-American and/or male in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, over 40 years old in violation of the Age Discrimination in Employment Act, and diabetic in violation of the Americans with Disabilities Act.

The Eleventh Circuit employs the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to evaluate Title VII, § 1981, ADA, and ADEA discrimination claims based on circumstantial evidence. *See Maynard v. Bd. of Regents of Div. of Fla. Dept. of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003) (Title VII); *Sledge v. Goodyear Dunlop Tires N. Am., Ltd.*, 275 F.3d 1014, 1015 n.1 (11th Cir. 2001) (§ 1981); *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004) (ADA); *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (ADEA). Under this framework, the plaintiff must first establish a *prima facie* case of discrimination. *Maynard*, 342 F.3d at 1289. The plaintiff succeeds at this step by showing that (1) he is a member of a protected class; (2) he was qualified for his position; (3) he suffered

an adverse employment action; and (4) he was treated less favorably than a similarly situated individual outside of his protected class. *Id.*

Under the third element of the *prima facie* case, for conduct to qualify as an "adverse employment action," the conduct "must, in some substantial way, 'alter[] the employee's compensation, terms, conditions, or privileges of employment, deprive him or her of employment opportunities, or adversely affect [] his or her status as an employee.'" *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (quoting *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000)). And the change in compensation, terms, conditions, or privileges of employment must be "serious and material." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001).

Under the fourth element of the *prima facie* case, to show that his employer treated him less favorably than a similarly situated individual outside of his protected class, the plaintiff must present evidence that he and that individual—a so-called "comparator"—were "similarly situated in all material respects." *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1218 (11th Cir. 2019).

But succeeding under *McDonnell Douglas* is not the only way a plaintiff can defeat summary judgment. Rather, a plaintiff can also show "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith v. Lockheed-Martin Corp.*, 644 F.3d

11

1321, 1328 (11th Cir. 2011) (quotations, citations, and footnote omitted).

Here, Mr. Powell has not stated a *prima facie* case of discrimination under *McDonnell Douglas* or offered any circumstantial evidence of discrimination. His discrimination claims based on the NLRB giving him a "Fully Successful" performance appraisal, verbally counseling him about the unprofessional tone of his emails, and reassigning the Hillshire case investigation fail because those actions are not adverse employment actions. And his discrimination claims based on his termination and the NLRB's failure to promote him—which are adverse employment actions—fail because he has not shown that the NLRB treated him less favorably than a similarly situated individual outside of his protected class.

### 1. *Discrimination claims not based on termination and failure to promote*

The verbal counseling that Mr. Powell received for his unprofessional email was not an adverse employment action because the meeting and the letter memorializing that meeting only "express[ed] concern and criticism by [Mr. Harrell] over one aspect of [Mr. Powell's] recent performance." *See Davis*, 245 F.3d at 1240 (finding that such a counseling memorandum, without evidence of any tangible consequences, was not an adverse employment action). No evidence shows that the counseling affected the terms or conditions of Mr. Powell's employment in any serious or material way, so the counseling was not an adverse employment action.

Mr. Powell's "Fully Successful" performance appraisal fails to rise to an adverse employment action because no evidence shows any tangible consequences of this appraisal. *See Greene v. Alabama Dep't of Pub. Health*, 2017 WL 727038, at *7 (M.D. Ala. Feb. 3, 2017) (finding that the plaintiff's "middling" performance appraisals were not adverse employment actions because the plaintiff "[did] not allege any appreciable consequence" of the appraisals). An unfavorable performance appraisal *could* affect an employee's future opportunities, but no evidence on the record in this case shows any actual or potential serious consequences of Mr. Powell's "Fully Successful" appraisal.

And the NLRB did not commit an adverse employment action when it reassigned the Hillshire case. The reassignment only changed Mr. Powell's work responsibilities; it did not change his salary, title, or any other terms of his employment. So, to show that the reassignment was nevertheless an adverse employment action, Mr. Powell must show that the reassignment was "one of those unusual instances where the change in responsibilities was so substantial and material that it [] indeed alter[ed] the terms, conditions, or privileges of [his] employment." *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1203 (11th Cir. 2013) (quotations omitted). He has not done so; no evidence shows how being released from the Hillshire case was such a substantial and material change to his employment.

So, because Mr. Powell's discrimination claims not based on termination or failure to promote do not state an adverse employment action as required to state a *prima facie* case of discrimination, the court will grant summary judgment for the NLRB as to those claims.

> 2. *Discrimination claims based on termination and failure to promote*

Turning to Mr. Powell's claims based on actual adverse employment actions—termination and failure to promote—those claims fail because Mr. Powell has not shown that the NLRB treated him less favorably than any employee outside of his protected class similarly situated to him in all material respects. In fact, Mr. Powell has not engaged in any meaningful comparator analysis at all.

Instead, Mr. Powell brings the following allegations of employee misconduct and the NLRB's disciplinary actions or lack thereof that, according to Mr. Powell, show that the NLRB treated him less favorably than similarly situated white and/or female employees:

- "Frank Rox and several other white males failed to follow the orders of [supervisors] but they were never investigated, disciplined, or had their appraisal negatively affected by their acts";

- The IG has found that "other attorneys" lost affidavits but did not discipline them;

- "There were multiple instances of behavior inconsistent with NLRB professional responsibilities by white and female employees including but not limited to multiple instances of insubordination, refusal to complete assigned duties, sexual activity on Agency property, and theft

of Agency funds with little or no discipline . . .";

- "[A]n election specialist . . . failed in his basic duties and misrepresented the facts to his supervisors in Region 10 and got a letter of reprimand which was removed after a year" and was not "referred to the IG nor terminated";

- "Carla Wiley committed credit card fraud and lack of candor according to her investigation and received only a four day suspension," which, "to [Mr. Powell's] understanding[,] was removed from her file . . . later," and was not "referred to the IG nor terminated";

- "Individuals" outside of Mr. Powell's protected classes "were not investigated in the Region[,] not disciplined[,] and not terminated for their proven and serious violations of Agency rules and regulations";

- "[T]he only individual(s) issued discipline in Region 10 from 2010 through 2013 were African American Males";

- "Senior Management of Region 10 were well aware that McCarty[,] a field investigator[,] repeatedly refused to take affidavits as directed yet he never faced discipline or lowered appraisals for his misconduct";

- "No Field Attorney in Region 10 other than Powell was suspended or terminated within five (5) years of his dismissal other than Carla Wiley further Wiley's suspension was later reduced from four (4) days to two (2) days despite her criminal act and lack of candor";

- NLRB supervisors "either failed to investigate allegations of the Region 10 Director having sex in the NLRB offices or . . . take action";

- NLRB supervisors refused to investigate "allegations of sexual misconduct by NLRB employees on NLRB property . . . because it involved a white male and female";

- "There has been only one IG investigation in Region 10 since Powell relevant to this case and the white female field attorney involved was not terminated";

- "Carla Wiley was never investigated for her misconduct with a bar rules violation";

- Frank Rox "was insubordinate and engaged in cursing matches with [the Regional Director] but he was never disciplined";

- "A white female attorney in the Atlanta Office of Region 10 was also guilty of sexual misconduct on the premises but [the IG] refused to investigate";

- "Carla Wiley, Kathi Chahrouri, Frank Rox[,] and others . . . have had one or multiple misconduct issues in the past and [were] never investigated by the IG or terminated despite the seriousness of their actions"; and

- "No other employee was individually counseled like Powell including Kathi Chahrouri who had a history of incivility in her email communications."

(*See* Doc. 60 at 18–27, 31).

For the most part, these allegations are conclusory and without evidentiary basis. But, more importantly, even if the court were to assume the truth of Mr. Powell's allegations[1], none of those allegations help Mr. Powell satisfy his actual burden to show that the NLRB treated him less favorably than an individual outside of his protected class "similarly situated [to him] in all material respects." *See Lewis*, 918 F.3d at 1218.

To be "similarly situated in all material respects," ordinarily, the comparator

---

[1] The court assumes the truth of Mr. Powell's allegations *only* for argumentative purposes and to demonstrate that he has nevertheless failed to raise a genuine issue of discrimination. In doing so, the court reinforces that it does not accept the truth of conclusory allegations on summary judgment. As stated above, the court must only construe factual evidence in the light most favorable to the non-moving party and draw reasonable inferences in favor of the non-moving party. *See White*, 789 F.3d at 1191.

"will have engaged in the same basic conduct (or misconduct) as the plaintiff"; "will have been subject to the same employment policy, guideline, or rule as the plaintiff"; "will ordinarily (although not invariably) have been under the jurisdiction of the same supervisor as the plaintiff"; "will share the plaintiff's employment or disciplinary history"; and "cannot reasonably be distinguished" *Id. Lewis*, 918 F.3d at 1227–28 (citations and quotations omitted). But no evidence shows that Mr. Powell and another employee shared *any* of these characteristics or circumstances. No evidence shows that any employee besides Mr. Powell had ever failed to safeguard agency property, failed to report a breach of confidentiality, acted insubordinately when supervisors asked about such breach, and lacked candor during an investigation into the breach, or any similar series of transgressions. So Mr. Powell has not offered any evidence to support an inference that the NLRB treated him differently because of any protected characteristic. And no evidence, individually or collectively, paints "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *See Smith*, 644 F.3d at 1328 (quotations, citations, and footnote omitted).

Mr. Powell's discrimination claims based on adverse employment actions do not rely on any evidence from which a reasonable jury could infer discrimination, so the court will grant summary judgment for the NLRB as to those claims.

17

## B. Retaliation

Mr. Powell next claims that the NLRB initiated its investigation of the lost affidavits and terminated him in retaliation for his bringing EEO complaints against the NLRB that the parties settled in October 2012. For the following reasons, the court disagrees.

The *McDonnell Douglas* burden-shifting analysis also applies to retaliation claims based on circumstantial evidence. *Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1310 (11th Cir. 2016). "To establish a prima facie case of retaliation . . . , 'the plaintiff must show (1) that she engaged in statutorily protected expression; (2) that she suffered an adverse employment action; and (3) that there is some causal relation between the two events.'" *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007) (quoting *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994)).

Here, to focus on the primary issue with Mr. Powell's retaliation claim, the court will assume without deciding that filing and then settling the EEOC case in October 2012 was statutorily protected expression and that the NLRB's initiation of the investigation in February 2013 was itself an adverse employment action.[2] So the court turns to the third element of Mr. Powell's retaliation claim—requiring him to show that "some causal relation between the two events" exists.

---

[2] By not evaluating whether the investigation itself was an adverse employment action, the court does not suggest that the investigation suffices as an adverse employment action.

Mr. Powell offers only one argument to support his contention that his EEO activity caused the NLRB's investigation: "[the] investigation which led to the adverse job action against Powell of termination was begun only four (4) months after Powell's successful settlement of his pending EEO cases against Region 10 and its agents on October 22, 2012." (Doc. 60 at 33). Indeed, on October 22, 2012, the NLRB agreed to settle Mr. Powell's past claims of discrimination by increasing his overall performance rating on two prior appraisals, rescinding a past reprimand, providing opportunities for career advancement, and paying him $20,000. (Doc. 25-14 at 1–2).

But to raise a genuine issue of causation based *only* on the temporal proximity between the settlement and the investigation, the temporal proximity must be "very close." *See Cooper Lighting*, 506 F.3d at 1364. The settlement and the investigation, taking place four months apart, were not "very close." *See id.* ("Thomas failed to present evidence from which a reasonable jury could find any causal connection between her April 2005 complaint(s) of sexual harassment and the termination of her employment three (3) months later in July 2005. That three (3) month period, without more, does not rise to the level of 'very close.'"). So, without any other evidence that could support an inference of causation, Mr. Powell has failed to state a *prima facie* case of retaliation.

Also, Mr. Powell has failed to show "a convincing mosaic of circumstantial

evidence that would allow a jury to infer intentional discrimination [or retaliation] by the decisionmaker" and survive summary judgment despite his failure to satisfy *McDonnell Douglas*. *See Smith*, 644 F.3d at 1328 (quotations, citations, and footnote omitted). As explained in detail above, no circumstantial evidence suggests that Mr. Powell's termination had anything to do with any protected characteristic or EEO activity.

## IV. CONCLUSION

For the reasons stated above, by separate order, the court will **GRANT** the NLRB's motion for summary judgment. (Doc. 53).

**DONE** and **ORDERED** this 20th day of September, 2019.

_____
**KARON OWEN BOWDRE**
CHIEF UNITED STATES DISTRICT JUDGE